UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
CABLE FIRST CONSTRUCTION INC. et al., :  **ORDER GRANTING**
                                      :  **IN PART DEFENDANT'S**
                        *Plaintiffs*, :  **MOTION TO DISMISS**
                                      :
         -against-                    :
                                      :  20 Civ. 6679 (AKH)
                                      :
LEPETIUK ENGINEERING CORP. et al.,    :
                                      :
                        *Defendants*. :
                                      :
---------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

   On March 27, 2020, Cable First Construction Inc. ("Cable First") and John Quaranta ("Quaranta") filed suit against Lepetiuk Engineering Corp. ("LEC") and Dmytro Lepetiuk ("Lepetiuk") alleging six causes of action stemming from the alleged breach of a subcontracting agreement and its related non-compete, non-solicitation, and non-disclosure agreements. *See* Compl., ECF No. 3-1. On January 27, 2021, I dismissed all of Plaintiffs' claims, with the exception of Cable First's breach of contract claim, with leave to amend, and dismissed both Quaranta and Lepetiuk from the action. LEC and Lepetiuk (even after being dismissed) now move to dismiss Cable First's amended complaint on the grounds that neither Cable First nor Quaranta have the legal capacity to bring this action; or, in the alternative, dismissal of Count I for fraud, Count III for specific performance, Count IV for a declaratory judgment, Count V for injunctive relief, and Count VI for tortious interference, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Defendants' motion is granted in part.

   The facts as alleged are as follows. Cable First is a prime contractor that installs and repairs fiber optic cables for national communications companies. Am. Compl. ¶ 6. Cable First

1

entered into a contract with cable television provider Altice to install fiber optic cables in various locations in New York. *Id.* ¶¶ 7-8. In order to provide such services, Cable First and LEC, its subcontractor, entered into a subcontracting agreement in October 2019, as well as related non-compete, non-solicitation, and non-disclosure agreements which prevented LEC from independently providing its services directly to customers within the New York Metropolitan area. *Id.* ¶¶ 9-10.

Cable First alleges that LEC breached the contracts by leaving equipment and trailers unattended and intentionally damaging their equipment. *See id*. ¶¶ 15-19. It further alleges that the work had to be redone on multiple occasions because LEC negligently installed the wires with too little tension. *Id.* ¶ 22. As a result of these actions, Altice demanded that Cable First terminate LEC, which it did on March 9, 2020. *Id.* ¶¶ 23-24. Altice also notified Cable First that LEC was overbilling for coil footage and refused to reimburse Plaintiff for the payments to LEC, even though Plaintiff had already paid LEC for the materials. *Id.* ¶ 25. Despite being terminated, LEC allegedly continued to trespass on Cable First's property and locked Cable First out of its own yard. *Id.* ¶ 26. Cable First also alleges that LEC was providing services to Plaintiff's customers in contravention of the non-compete agreement and even used Cable First's materials for projects with their customers. *Id*. ¶ 27. They also allege that LEC filed a false police report claiming that Quaranta damaged LEC's property, even though LEC had stolen several trailers from Plaintiff. *Id.* ¶ 29.

LEC and Lepetiuk removed the action to this Court based upon diversity jurisdiction on August 20, 2020, and subsequently moved to dismiss the action. *See* ECF Nos. 3, 5. I dismissed Quaranta as a party, holding that he was not a party to the contracts between LEC and Cable First. ECF No. 22. I also dismissed Cable First's claims for fraud, specific performance, unjust

enrichment, declaratory judgment and injunctive relief, with leave to replead. *Id.* Finally, I dismissed all claims against Lepetiuk, since he was not a party to the contracts. *Id.* LEC answered the original complaint on February 26, 2021, asserting counterclaims against Cable First and Quaranta. *See* ECF No. 27.

On February 25, 2021, Cable First filed an amended complaint, alleging six causes of action: fraud (first); breach of contract (second); specific performance (third); declaratory judgment (fourth); and injunctive relief (fifth) against LEC, and tortious interference against Lepetiuk. LEC and Lepetiuk, before Answer, now seek to dismiss the complaint in its entirety on the grounds that neither Cable First nor Quaranta have the legal capacity to bring this action; or, in the alternative, dismissal of Count I for fraud, Count III for specific performance, Count IV for a declaratory judgment, Count V for injunctive relief, and Count VI for tortious interference, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs oppose, and argue that Defendant's motion is untimely, as Defendants previously filed an answer to the complaint.

**Removal of Plaintiff Quaranta**

I reaffirm my previous holding that Plaintiff Quaranta is not entitled to sue for injuries under the disputed contracts because he was not a party to the contracts or a third-party beneficiary. *See Fifty States Mgmt. Corp. v. Niagara Permanent Savings & Loan Assoc.*, 58 A.D.2d 177, 179, 396, N.Y.S.2d 925, 927 (4th Dept. 1977) ("Under New York law, an individual shareholder has no right to bring an action in his own name . . .for a wrong committed against the corporation."). Nor does his ownership of Cable First provide him with the right to sue. *See Premium Mortg. Corp. v. Equifax Inc.*, 583 F.3d 103, 108 (2d Cir. 2009), *Hillside Metro. Assoc., LLC v. JPMorgan Chase Bank, N.A.*, 747 F.3d 44, 48-49 (2d Cir. 2014). Plaintiff has provided

no information which would cause me to reconsider my previous holding. As such, Quaranta is hereby terminated as a plaintiff, but remains as a counter-defendant.

**CableFirst's Legal Capacity to Sue**

Defendants next argue that Cable First cannot maintain this action because it is not licensed to do business in New York. *See* New York Business Corporations Law§ 1312(a) ("A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed"). This restriction also applies to actions in federal courts based on diversity. *See Netherlands Shipmortgage Corporation LTD v. Madias*, 717 F.2d 731 (2d Cir. 1983). Whether a foreign corporation is "'doing business' within the purview of section 1312 depends upon the particular facts of each case with inquiry into the type of business activities being conducted." *See Highfill, Inc. v. Bruce and Iris, Inc.,* 50 A.D.3d 742, 743 (2d Dept 2008). The burden rests with the moving party to prove that Plaintiff's business activities within New York "were not just casual or occasional, but so systematic and regular as to manifest continuity of activity in the jurisdiction." *Highfill,* 50 A.D. 3d at 743. "[A] corporation must do more than make a single contact, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose." *See Int'l Fuel & Iron Corp. v. Donner Steel Co.,* 242 N.Y. 224, 229, 151 N.E. 214 (N.Y. Ct. App. 1926). "Absent sufficient evidence to establish that a plaintiff is doing business in this state, the presumption is that the plaintiff is doing business in its State of incorporation and not in New York." *Highfill,* 50 A.D. 3d at 743–744.

I find there is sufficient evidence that Cable First was conducting business within New York. Cable First allegedly provided construction and installation of fiber optic cable in multiple locations in New York: in Kings County, the Bronx, and "in various locations on Long Island." Am. Compl. ¶ 7. While the installation was conducted based on a single contract with a cable television provider, other facts suggest that Plaintiff engaged in repeated transactions in New York. *Compare Scaffold–Russ Dilworth, Ltd. v. Shared Management Group, Ltd.* 256 A.D.2d 1087, 682 N.Y.S.2d 765 (4th Dept 1998) (finding that contractor was "doing business" in the state when it rented scaffolding to eight public and private construction sites) *with Special Breaks, LLC v. 201 Murray Ave.*, LLC, 54 Misc. 3d 1225(A), 55 N.Y.S.3d 694 (N.Y. Sup. Ct. 2017) (finding that a single 12-day job does not constitute systematic and regular activity in New York). Cable First and LEC entered into a non-compete which prevented LEC from providing direct services in the New York Metropolitan Area, which certainly indicates that Cable Frist was repeatedly conducting business in New York. *See Lok Prakashan v. India Abroad Publications,* 94 Fed. App'x 856 (2d Cir.2004) (party maintaining no office, owning no real property, and having no employees in New York found not to be "doing business" in New York); *MKC-S, Inc. v. Laura Realty Co.,* 43 Misc. 3d 1215(A), 988 N.Y.S.2d 524 (N.Y. Sup. 2014) (finding that acting continuously as the sub-landlord for commercial property is "doing business"); *see also Globaltex Grp., Ltd. v. Trends Sportswear, Ltd.,* No. 09-CV-235 (JBW), 2009 WL 1270002, at *3 (E.D.N.Y. May 6, 2009) (collecting cases).

Cable First admittedly does not have a Certificate of Authority to conduct business in New York. Walker Decl. ¶ 5, ECF No. 32. However, "'the failure of plaintiff to obtain a certificate pursuant to BCL 1312 may be cured prior to the resolution of the action.'" *SD Prot., Inc. v. Del Rio*, 498 F. Supp. 2d 576, 581 (E.D.N.Y. 2007) (citing *Uribe v. Merchants Bank of*

*New York,* 266 A.D.2d 21, 697 N.Y.S.2d 279, 280 (1st Dept.1999)). "[A]n appropriate remedy for a section 1312 violation is a conditional dismissal or stay of the action pending cure of the violation." *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 853 (2d Cir.1987). Here, Cable First has taken steps to obtain a certificate and pay the requisite fee. *See* Walker Decl. ¶ 5. I therefore decline to dismiss the action on these grounds, provided that Cable First submits proof of registration with the State of New York within 10 days from the date of this order.

**<u>12(b)(6) Motion</u>**

Defendants also seek dismissal of Count I for fraud, Count III for specific performance, Count IV for a declaratory judgment, Count V for injunctive relief, and Count VI for tortious interference, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). As a threshold matter, I find that Defendant's motion to dismiss is timely. Defendants have not served a responsive pleading to the Amended Complaint at issue; LEC's answer was specifically filed in response to the March 27, 2020 original complaint. I also find that Cable First has failed to state plausible claims for fraud, specific performance, declaratory judgment, injunctive relief, or tortious interference.

In order to survive a motion to dismiss, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

I first find that Cable First has not sufficiently pled a claim for fraud. Cable First has not met either the *Iqbal/Twombly* pleading standard, or Fed. R. Civ. P. 9(b)'s requirement that a

6

party must "state with particularity the circumstances constituting fraud or mistake." To state a claim for fraudulent inducement, Cable First must allege a misrepresentation of a present fact, falsity, scienter, reliance, and damage; or they must allege concealment of a material fact notwithstanding a duty to disclose, scienter, reliance, and damages. *See Allied Irish Banks, P.L.C. v. Bank of Amer., N.A.,* No. 03 Civ. 3748 (DAB), 2006 WL 278138, *6 (S.D.N.Y., Feb. 2, 2006). Here, Plaintiff's conclusory allegations that LEC's actions were "illegal, despicable, reckless, malicious, deliberate, and immoral," provides no factual allegations about any misrepresentation made by LEC that Cable First could have relied on. Indeed, Plaintiff has not alleged a single representation, whether true or false, that Defendants made to Cable First. Nor has Cable First alleged any factual information which would establish scienter. The actions that Cable First complains of are LEC's failure to comply with the non-compete and subcontracting agreement. As I previously held, it cannot "dress up a contract claim in a fraud suit of clothes." *Triangle Underwriters, Inc. v. Honeywell, Inc*. 604 F.2d 737, 747 (2nd Cir. 1979). Accordingly, Cable First's claim for fraud is dismissed.

I next find that Cable First has failed to plead a claim for specific performance. A claim for specific performance "must show . . .that the party is ready willing and able to perform the contract and has fulfilled all of its duties to date. . .that it is within the opposing party's power to perform and. . . that there is no adequate remedy at law." *See Petrello v. White*, 412 F. Supp. 2d 215 (E.D.N.Y. 2006). In my previous order, I stated that Cable First had not provided any factual information as to whether it had fulfilled its obligations, or why monetary damages are inadequate, other than to state that they had "made preparations in anticipation of owning and operating the business." *See* Compl. ¶ 34. Cable First has failed to address these issues. The Amended Complaint now states that Plaintiff "has no adequate remedy at law, as the Plaintiff

7

continues to suffer past, present and future damages as a result of Defendant's breach." Am. Compl. ¶ 43. There are no further factual allegations regarding Cable First's performance of their duties under the contracts, nor has Cable First provided any information as to why monetary damages are inadequate in this case. The claim for specific performance is hereby dismissed.

Cable First's claim for a declaratory judgment is also dismissed. Cable First seeks a declaratory judgment that the contracts are valid and binding; however, declaratory judgment is inappropriate where the Plaintiff has an "adequate, alternative remedy in another form of action, such as breach of contract." *Apple Records, Inc. v. Capitol Records, Inc.*, 137 A.D.2d 50, 529 N.Y.S.2d 279, 281 (1988). Cable First has already asserted a claim for breach of the same contracts, therefore, declaratory judgment is inappropriate. *See Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 472 (S.D.N.Y. 2014) (quoting *Piven v. Wolf Haldenstein Adler Freeman & Herz L.L.P.*, No. 08–CV–10578, 2010 WL 1257326, at *11 (S.D.N.Y. Mar. 12, 2010) ("'[C]ourts have found declaratory judgment to be inappropriate where a party has already invoked its right to a coercive remedy.'"). Accordingly, Cable First's claim for declaratory judgment is dismissed.

Cable First's claim for an injunction enjoining Defendants from engaging in work with Plaintiff's competitor is also dismissed. A claim for a permanent injunction requires a showing of irreparable injury and the inadequacy of legal remedies. *See Ticor Title Ins. Co. v. Cohen,* 173 F.3d 63, 68 (2d Cir. 1999); *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1362 (2d Cir.1989) (to obtain permanent injunction the lack of an adequate remedy at law and irreparable harm must be shown). LEC claims that the covenant is unreasonable in time and geographic scope; however, I cannot determine whether the covenant is reasonable based on the allegations contained in the pleadings. Assuming that the covenant is reasonable in time and

geographic scope, "enforcement will be granted to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique." *See Ticor*, 173 F.3d 63, 70 (2d Cir. 1999) (citing *Purchasing Assocs. v. Weitz,* 13 N.Y.2d 267, 272–73, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963)). In the original complaint, Cable First alleged they would suffer irreparable harm "if Defendants are allowed to continue their employ with a competitor," but provided no factual support for this claim. Compl. ¶ 45. The Amended Complaint fares no better, as Plaintiff merely reiterates its conclusory allegation that it will suffer irreparable harm. Cable First provides no facts to establish the type of harm Cable First would face if LEC were to continue to work with a competitor, such as allegations that LEC's services were special or unique, or that LEC was in a position to disclose confidential information. *See* Am. Compl. ¶¶ 47-50. Cable First has therefore failed to plead sufficient factual allegations to support its claim for a permanent injunction and its claim is dismissed.

Finally, I hold that Cable First has failed to plead a claim for tortious interference against Lepetiuk. Tortious interference with contract requires: (1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of a third-party's breach of that contract without justification, and (4) damages. *Nagan Const., Inc. v. Monsignor McClancy Mem'l High Sch.*, 117 A.D.3d 1005, 1006, 986 N.Y.S.2d 532 (2014). Here, the pleadings allege that Lepetiuk "intentionally procured the breach by LEC. . . with the specific intent of causing Altice to terminate its agreement with Plaintiff so that LEC could falsely represent to Altice that Plaintiff was responsible for [the negligent work], not LEC." Am. Compl. ¶¶ 52, 54. However, Cable

First provides no factual allegations whatsoever which would establish that Lepetiuk intentionally caused LEC to breach its contract with Cable First in an attempt to induce Altice into terminating its agreement with Cable First. Cable First merely reiterates the ways in which LEC breached its subcontracting agreement. The claim for tortious interference is hereby dismissed.

In conclusion, Counts I and Counts III-VI are dismissed. Oral argument, scheduled for July 13, 2021, is cancelled. Plaintiff Cable First shall submit proof of registration with New York State, and file a second amended complaint within 10 days of the date of this order conforming to my Order and dropping John Quaranta and Dmytro Lepetiuk as parties. Defendant LEC shall file its answer to the Amended Complaint within 10 days after that. The parties are hereby ordered to appear for an initial pretrial conference on September 10, 2021, at 10 a.m. The Clerk is instructed to terminate the open motion, ECF No. 29.

SO ORDERED.

Dated: July 12, 2021  /s/ Alvin K. Hellerstein
        New York, New York  ALVIN K. HELLERSTEIN
        United States District Judge